UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GERALD J. KNARR,

                          Plaintiff,

                v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                         Defendant.

**DECISION
and
ORDER**

**19-CV-06027F**
(**consent**)

_____

APPEARANCES:                 LAW OFFICES OF KENNETH R. HILLER, PLLC
                                      Attorneys for Plaintiff
                                      MARY ELLEN GILL, of Counsel
                                      6000 North Bailey Avenue
                                      Suite 1A
                                      Amherst, New York 14226

                                      JAMES P. KENNEDY, JR.
                                      UNITED STATES ATTORNEY
                                      Attorney for Defendant
                                      Federal Centre
                                      138 Delaware Avenue
                                      Buffalo, New York 14202;

                                      KATHRYN L. SMITH
                                      Special Assistant United States Attorney, of Counsel
                                      United States Attorney's Office
                                      100 State Street, Suite 500
                                      Rochester, New York 14614, and

                                      DENNIS J. CANNING
                                      Special Assistant United States Attorney, of Counsel
                                      Social Security Administration
                                      Office of General Counsel
                                      601 E. 12th Street
                                      Room 965
                                      Kansas City, Missouri 64106, and

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

HEETANO SHAMSOONDAR
Social Security Administration
Office of General Counsel, of Counsel
26 Federal Plaza
Room 3904
New York, New York 10278

## JURISDICTION

On October 7, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 10).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 12, 2019 (Dkt. No. 11), and by Defendant on November 5, 2019 (Dkt. No.13).

## BACKGROUND

Plaintiff Gerald Knarr ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on June 20, 2016, for Social Security Disability Insurance ("SSDI"), ("disability benefits").  Plaintiff alleges he became disabled on November 15, 2015, based on metastatic testicular carcinoma, retroperitoneal lymphadenopathy (lymphatic cancer), deep vein thrombosis ("DVT"), back pain, leg pain, dysgeusia (taste disorder), fatigue, neutropenia (susceptibility to infection), and edema (excess tissue fluid).  (R. 243).

Plaintiff's application for disability benefits was denied on April 15, 2015 (R. 109). At Plaintiff's timely request, on March 8, 2018, a hearing was held in Rochester, New

York (R. 29-85).  Plaintiff, Plaintiff's attorney Mr. Joseph Paladino, Esq., ("Paladino"), and vocational expert Mr. Manzey ("VE"), appeared and testified.  On August 1, 2018, the ALJ issued a decision denying Plaintiff's claim (R. 15-22) ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  (R. 4).  On November 9, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  (R. 1-4).  On January 8, 2019, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision. (Dkt. No. 1).

On September 12, 2019, Plaintiff moved for judgment on the pleadings (Dkt. No. 11) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11-1) ("Plaintiff's Memorandum").  On November 5, 2019, Defendant moved for judgment on the pleadings (Dkt. No. 13) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13-1) ("Defendant's Memorandum").  Plaintiff filed on November 26, 2019, Plaintiff's Response to the Commissioner's Brief (Dkt. No. 14) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[2]

Plaintiff Gerald Knarr ("Plaintiff"), born on October 13, 1974 (R. 21), was 41 years old as of November 15, 2015, Plaintiff's alleged disability onset date ("DOD"), is married

---

[2] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

3

and lives with his daughter and daughter's mother on weekends. (R. 57). Plaintiff's past relevant work includes work as cable splicers helper, grinding machine tender, forklift operator, furnace helper, forklift operator, maintenance mechanic, pump servicer and Plaintiff's most recent work as a security camera installer. (R. 41-59).

In October 2014, Plaintiff was diagnosed and treated with chemotherapy and surgery for seminoma (testicular cancer).

On December 9, 2015, Plaintiff sought treatment for back pain radiating to Plaintiff's testicles, left thigh, right calf and foot from Urgent Care Lifetime Health ("Lifetime"), where Nurse Practitioner Tejwinder Dhaliwal ("N.P. Dhaliwal"), completed a physical examination on Plaintiff (R. 427), and noted that an X-ray of Plaintiff's lumbar spine showed a 1mm to 2mm retrolisthesis (posterior displacement) of Plaintiff's L3[3] and L4 disc segments with fracture deformities. (R. 418).

On February 24, 2016, Kira Kiriakidi, M.D. ("Dr. Kiriakidi"), completed a physical examination of Plaintiff who reported back pain occurring for a year since completing his cancer treatment. (R. 422). Dr. Kiriakidi noted significant edema (fluid) in Plaintiff's right leg with swelling and pain, diagnosed Plaintiff with deep vein thrombosis ("DVT"), and recommended that Plaintiff undergo an abdominal magnetic resonance imaging ("MRI") scan that revealed retroperitoneal lymphadenopathy (enlarged lymph nodes) behind Plaintiff's vena cava[4] and a right paracentral disc protrusion at Plaintiff's L5-S2 disc segment. (R. 434).

On March 21, 2016, Alexander Solky, M.D. ("Dr. Solky"), completed a physical examination on Plaintiff and noted that Plaintiff reported right leg pain rated as 10 out of

---

[3] L3 and L4 are numbered segments of an individual's lumbar spine.
[4] The inferior vena cava is a large vein that carries blood from the heart to the lower extremities.

4

10 while Plaintiff was taking his oxycodone (pain), and that Plaintiff was unable to walk because of his leg pain.  Dr. Solky noted that Plaintiff's right leg DVT would require treatment before Plaintiff was able to receive chemotherapy treatment for Plaintiff's retroperitoneal adenopathy.  (R. 474).

On April 1, 2016, Dr. Solky noted that Plaintiff completed one cycle of in-patient seminoma chemotherapy treatment, and that Plaintiff reported difficulty eating and fatigue.  (R. 577-79).

On May 9, 2016, Plaintiff was admitted to Unity at Park Ridge Hospital ("Unity"), for treatment of diarrhea, seminoma, dehydration, hypoxemia, and acute DVT (R. 400), where an abdominal CT the following day showed colitis in Plaintiff's colon and likely renal cysts.  (R. 385).  Plaintiff was discharged from Unity on May 11, 2016.

On July 11, 2016, a chest CT scan showed improvement in Plaintiff's lymphadenopathy and stable renal cysts.  Plaintiff reported that pain and swelling in Plaintiff's right leg required Plaintiff to climb the stairs in his house on his hands and knees.  (R. 376, 382).

On April 11, 2016, Dr. Solky noted that Plaintiff's right leg pain and swelling had improved.  (R. 372).

On April 20, 2016, Robert Asbury, M.D. ("Dr. Asbury"), completed a physical examination on Plaintiff, noted that Plaintiff's massive right leg edema had returned, and that side effects from chemotherapy treatment included headache, body aches, and chills.  (R. 357).

On May 2, 2016, Dr. Solky noted that Plaintiff reported significant diarrhea, chills fatigue and tongue thrush (bacterial infection).  (R. 352). Plaintiff continued to report

side effects from chemotherapy on May 13, 2016 (dehydration) (R. 343), May 16, 2016 (salmonella and diarrhea) (R. 347), May 31, 2016 (weight loss of 15 pounds in one week, fatigue) (R. 338), June 8, 2016 (headache) (R. 333), June 27, 2016 (fatigue, swollen gums) (R. 330), July 13, 2016 (fingertip tingling, leg swelling) (R. 327).

On September 9, 2016, a venous doppler scan of Plaintiff's right leg showed an extensive blood clot from Plaintiff's femoral vein to Plaintiff's right lower leg with mild flow improvement.  (R. 450).

On September 14, 2016, Dr. Bernold noted that Plaintiff reported increased energy, occasional hand tingling, and that prolonged standing increased the swelling in Plaintiff's right leg.  (R. 443).

On August 9, 2017, Dirk Bernold, M.D. ("Dr. Bernold"), completed a medical statement on Plaintiff's functional limitations, noted that Plaintiff reported severe fatigue, nausea, and vomiting, and was able to stand for 60 minutes at a time, sit for two hours at a time, and lift up to 10 pounds on an occasional basis.  (R. 620).

On August 28, 2017, Genevieve Johnson, (M.D.) ("Dr. Johnson"), completed a physical examination on Plaintiff, noted that Plaintiff reported chronic right hip and knee pain, that Plaintiff wore a knee brace and regularly shifted in his chair, and reported severe insomnia (no sleep for two-to-three days at a time).  (R. 594-96).

On January 9, 2018, Plaintiff sought treatment from Unity emergency room for severe back pain, bilateral foot tingling, and right knee pain radiating to Plaintiff's right thigh. (R. 627).

On March 27, 2018, Adam Brownfield, PhD., ("Dr. Brownfield"), completed a consultative psychiatric evaluation on Plaintiff, and noted that Plaintiff had mild

limitations to sustaining concentration, performing at a consistent pace, sustaining an ordinary work routine with regular attendance, and applying complex directions and instructions. (R. 652).

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

7

whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found that Plaintiff met the Act's insured status requirement for SSDI through December 31, 2020 (R. 17), did not engage in substantial gainful activity since November 15, 2015, Plaintiff's alleged disability onset date, and has the severe impairments of seminoma with surgical treatment and a lower back disorder.  *Id.*  The ALJ further found Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any listed impairments in Appendix 1 (R. 18), retains the RFC to perform light work with limitations

9

to occasional lifting and carrying up to 10 pounds, standing for a total of six hours in an eight hour workday (R. 18), that Plaintiff is unable to perform his PRW as a cable splicer helper, pump service, and maintenance mechanic (R. 21), but, given that Plaintiff is defined as a younger individual as of Plaintiff's alleged disability onset date, has at least a high school education and the ability to communicate in English and the residual functional capacity to perform light work, jobs exist in significant numbers in the national economy that Plaintiff can perform, including ticket taker and information clerk such that Plaintiff is not disabled as defined under the Act.  (R. 21-22).

Plaintiff argues that the ALJ erroneously applied the treating physician rule by affording significant weight to Dr. Bernold's finding that Plaintiff was able to occasionally lift up to 10 pounds, stand for one hour at a time and sit for two hours at a time, yet provided no indication on the total number of hours that Plaintiff was capable of sitting and standing during an eight-hour workday and, whether that total would erode Plaintiff's ability to perform light work.  Plaintiff's Memorandum at 10-11 (referencing R. 20, 620).  Defendant maintains that the ALJ properly afforded significant weight to the findings of Dr. Bernold as such findings were supported by substantial evidence in the record, and that limitations to Plaintiff's ability to sit and stand during Plaintiff's cancer treatment did not last the required 12-month durational period for disability.  Defendant's Memorandum at 16-18.

Plaintiff's disability application filed on June 20, 2016, is subject to the treating physician rule.  *See* 20 C.F.R. §§ 404.1527, 416.927 (2017).  Generally, the opinion of a treating physician is entitled to significant weight but only when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not

inconsistent with other substantial evidence in the case record." *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. App'x. 34, 35 (2d Cir. 2017) (quoting *Burgess v. Astrue ("Burgess")*, 537 F.3d 117, 128 (2d Cir. 2008), 20 C.F.R. § 404.1527(d)(2)). In instances where the ALJ discounts a treating physician's opinion however, the ALJ must set forth "good reasons" for doing so. *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The failure to provide good reasons for rejecting a treating physician opinion is grounds for remand. *Schall v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 2004) (*per curiam*) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In this case, upon affording significant weight to Dr. Bernold's finding that Plaintiff was able to sit for two hours at a time, stand for 60 minutes at a time and occasionally lift 10 pounds (R. 18) (referencing R. 620), the ALJ determined that Plaintiff retained the residual functional capacity to perform light work with limitations to occasional lifting up to 10 pounds and standing for a total of six hours in an eight-hour workday. *Id.* Light work requires

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time but with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

The walking and standing capability for "light work" is "frequent" which is defined as

> off and on, for a total of approximately 6 hours of an 8-hour workday . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

Social Security Rule ("SSR") 83-10, 1983 WL 31251, at *6.

Accordingly, a plain reading of the relevant regulation describing work of a light exertion, *i.e.,* 20 C.F.R. § 416.1567(b), and the pertinent portion of SSR 83-10, establishes that light work requires the ability to sit and stand for a combined six hours in an 8-hour workday and not, as Plaintiff argues, for a total of six hours of continuous standing or sitting. Moreover, contrary to Plaintiff's argument, Discussion, *supra,* at 10, the total number of hours that Plaintiff is able to sit or stand during an eight-hour workday is irrelevant because the number of hours required for standing while engaged in light work is "approximately" six hours in an eight-hour workday, and relatively few unskilled light jobs are performed in a sitting position. *See* SSR 83-10 at*6.

By finding Plaintiff capable of sitting for two hours at a time and standing for 60 minutes at a time, Dr. Bernold establishes that Plaintiff is capable of performing light work. As such, the ALJ's determination to afford significant weight to Dr. Bernold's finding on Plaintiff's ability to stand and walk supports the ALJ's finding that Plaintiff is capable of performing light work. Plaintiff's argument that the ALJ erred by affording significant weight to Dr. Bernold's opinion regarding Plaintiff's ability to sit and stand is therefore without merit. Plaintiff's motion on this issue is DENIED.

Plaintiff's further argument, Plaintiff's Memorandum at 15, that the ALJ erred by not including Dr. Brownfield's opinion that Plaintiff had a mild limitation to sustaining

concentration, performing at a consistent pace, sustaining an ordinary work routine with regular attendance, and applying complex directions and instructions (R. 651-52), in the ALJ's residual functional capacity assessment of Plaintiff is also without merit.

In this case, upon answering hypothetical questions posed by the ALJ, the VE testified that Plaintiff retained the ability to perform the light, unskilled jobs of ticket taker and information clerk. (R. 60). Absent more definitive evidence to support that Plaintiff's depression was a severe impairment under step two of the disability review analysis, *i.e.,* that Plaintiff's depression significantly limits Plaintiff's ability to perform basic work activities, the ALJ was not required to include Plaintiff's depression during subsequent steps of the disability analysis. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (ALJ's failure to incorporate non-exertional limitations in a hypothetical otherwise supported by substantial evidence is harmless error where medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, and the challenged hypothetical is limited to include only unskilled work). Plaintiff's motion on this issue is DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. No. 11) is DENIED; Defendant's Motion (Dkt. No. 13) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   May 4, 2020
         Buffalo, New York